O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
## CIVIL MINUTES - GENERAL

Case No.   EDCV 07-01071-SGL (OPx)                           Date: January 16, 2009

Title:   RICHARD SPURLING -v- BRINK'S INCORPORATED
=====================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes
   Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR PLAINTIFFS:          ATTORNEYS PRESENT FOR DEFENDANTS:

None present                                None present


**PROCEEDINGS:   ORDER DENYING MOTION FOR SUMMARY JUDGMENT (Docket #27)**

     This matter was heard on December 15, 2008, at which time the Court took defendant's motion for summary judgment under submission.

     Plaintiff, an African-American man, was a Branch Manager for a company that offers transportation of valuables, most often cash, in armored vehicles.  His employment was terminated on July 22, 2005, after seventeen months in that position.

     The evidence regarding plaintiff's performance in this position is mixed.  Defendant has presented evidence that the branch, under plaintiff's leadership, had high turnover, an increase in traffic accidents, and an increase in complaints about service from clients.  Plaintiff has presented evidence that he increased the profitability of the branch and expanded an on-the-job training program.  There is mixed evidence regarding the morale at the branch, whether an issue regarding the couriers' access to radios was handled well, and regarding plaintiff's subordinates' perception of him (e.g., whether he was "approachable" or not).  Additionally, there were accusations from non-minority employees, eventually found to be unsubstantiated, of racial favoritism by plaintiff in favor of African-Americans.

     During the 17-month period that Plaintiff was the Branch Manager, the racial composition of the branch's employees was as follows:  40.9% Hispanic, 39.1% Caucasian, 15.1%

African-American, 4.4% Asian, and 0.4% American Indian/Alaska Native.

When plaintiff took the position of Branch Manager, the two other managers at the branch were Caucasian. On November 1, 2004, when one of the Caucasian manager's positions became open, Ms. Gadsden, who is African-American, was appointed to replace her.

Plaintiff testified, and defendant disputes, that in March, 2005 and again in April, 2005, he was told by his manager to fire Ms. Gadsden because the branch's management had a "black face." Plaintiff also testified that when he pointed out he had no legitimate reason to fire her, he was told to "find a reason." Plaintiff refused to do so.

Around that same time, on April 22, 2005, plaintiff received a performance review for the period of March 1, 2004, to March 1, 2005. This performance review awarded a 2% "merit increase" in salary, but identified a number of areas of deficiencies in plaintiff's performance, including employee retention, team-building, and leadership. This resulted in plaintiff being placed on a Management Improvement Plan ("MIP"), which required that plaintiff develop strategies to address his deficiencies. The MIP stated that plaintiff was "expected to achieve and sustain the expectations of this plan . . . or be subject to disciplinary action up to and including termination." When, according to defendant, plaintiff failed to remedy these deficiencies, and after defendant received other information regarding poor performance by plaintiff, his employment was terminated on July 22, 2005.

Plaintiff has asserted both a race discrimination claim and a retaliation claim pursuant to California law.

In employment discrimination and retaliation cases, California has adopted a three-stage burden-shifting test established by the United States Supreme Court for trying employment discrimination claims that are based on the disparate treatment theory. Guz v. Bechtel Nat. Inc., 24 Cal.4th 317, 354 (Cal. 2000) (citing, *inter alia*, McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).

Under the "McDonnell Douglas test," (1) the plaintiff must establish a prima facie case of discrimination or retaliation; (2) if the plaintiff is successful, the employer must offer a legitimate nondiscriminatory reason for its actions; and (3) if the employer produces evidence on that point, the plaintiff must show that employer's reason was a pretext for discrimination. Guz, 24 Cal.4th at 354-56.

To establish a prima facie case of race discrimination, a plaintiff must show: (1) he is a member of a protected minority; (2) he was performing his job in a satisfactory manner; (3) he suffered an adverse employment action; and (4) he was replaced by an individual outside the protected class with equal or inferior qualifications, that similarly-situated employees outside the protected class were treated more favorably, or that her termination occurred under circumstances giving rise to an inference of race discrimination. See Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).

Similarly, to establish a prima facie case of retaliation under California law, plaintiff must show that (1) he engaged in protected activity; (2) the employer subjected him to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. Jones v. R.J. Correctional Facility, 152 Cal. App. 4th 1367, 1380 (2007).

Once a plaintiff establishes a prima facie case, the burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the action taken. See Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).

If that burden is met, the plaintiff must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination. Diaz v. Eagle Produce Ltd. Partnership, 521 F.3d 1201, 1207 (9th Cir. 2008) (noting, however, that "[a]s a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment.") (internal quotation marks and citation omitted).

The McDonnell Douglas test "reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially. Thus, by successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained." Guz, 24 Cal.4th at 354.

As for plaintiff's race discrimination claim, defendant conceded at oral argument, and on the record this Court certainly agrees, whether plaintiff's claim survives summary judgment turns on whether he meets the third part of the McDonnell Douglas test. Here, plaintiff testified that he was instructed to fire one of his two fellow managers (and the only other African-American manager) because defendant wanted to lighten the "black face" of management. He refused, and was himself terminated three months later. Defendant denies this evidence, but the Court, in considering a motion for summary judgment, must view the facts in a light most favorable to the nonmoving party, and must make all reasonable inferences to be drawn from that evidence in favor of the nonmoving party. A reasonable inference that may be drawn from the evidence offered by plaintiff is that he was not terminated for his purported performance deficiencies but was instead terminated to further the impermissible goal of lightening the "black face" of management at plaintiff's branch. For that reason, plaintiff has raised a triable issue of fact as to his race discrimination claim.

Plaintiff has also raised a triable issue of fact as to his retaliation claim. He has established all three elements of the prima facie case. According to plaintiff's testimony, he engaged in protected activity by refusing to find a legitimate reason to terminate the employment of an African-American manager based on her race. It is undisputed that plaintiff's employment was terminated, and he therefore suffered an adverse employment action. As for the causal link, this element may be established by a temporal proximity between the protected activity and the adverse employment action. See e.g., Davis v. Team Elec. Co., 520 F.3d 1080, 1094 (9th Cir. 2008). Defendant argues that plaintiff's termination occurred more than three months after his protected activity and therefore the temporal link is too tenuous to support the third element of his prima facie case.

Recognizing, however, that the termination of employment is often a process accomplished over time rather than a single, discrete act on the part of the employer, the Court disagrees.  Plaintiff testified he was instructed to fire Ms. Gadsden in March and April 2005, and it is undisputed that, no more than three weeks later, on April 22, 2005, he was placed on the MIP that led to his termination.  A reasonable jury could infer that less than three weeks after plaintiff's failure to fire Ms. Gadsden, defendant began the process that it believed was necessary to effectuate the retaliatory discharge of plaintiff.  Alternatively, as plaintiff testified that this task, as imposed upon him, was to "find a reason" to fire Ms. Gadsden, a reasonable jury could likewise infer that defendant expected that this was a task that might take plaintiff days or weeks to accomplish and thus plaintiff's refusal to fire Ms. Gadsden (and thus his protected activity) continued past the date he was instructed to fire her.  In this manner, plaintiff has established a prima facie case of retaliation.

Although defendant has met its burden to articulated a legitimate, non-retaliatory reason for plaintiff's discharge, plaintiff has met his burden on pretext for the reasons set forth in connection with his race discrimination claim.  A reasonable jury could infer that plaintiff was discharged to accomplish the twin goals of retaliating against him for his refusal to engage in race discrimination and to lighten the "black face" of management.  Plaintiff has therefore raised a triable issue of fact as to his retaliation claim as well.

In denying the motion for summary judgment, the Court is cognizant of its duty, aptly raised by defendant, to refrain from second-guessing the business judgment of employers regarding their staffing decisions.  See Gonzales v. Metpath, Inc., 214 Cal. App. 3d 422, 428 (1989) ("Employers must be given wide latitude to make independent, good faith personnel decisions without the threat of a jury second-guessing their business judgments."), abrogated on other grounds, Moisi v. College of Sequoias Cmty. College, 19 Cal. App. 4th 564 (1993).  But the Court cannot here overlook the testimony of plaintiff, which clearly states that defendant was of the opinion that there were too many African-American employees at the very top of the organizational chart of plaintiff's branch, that plaintiff was tasked with carrying out an illegal act to achieve the goal of remedying that "problem," and that plaintiff refused to engage in this illegal activity.  The record is clear that, immediately thereafter, plaintiff was subjected to a performance management program that led, in three months' time, to his own discharge, a result that accomplished the improper goal plaintiff refused to pursue.

Defendant questions the credibility of plaintiff's testimony on this point and, certainly, the other party to defendant's supposed request vehemently denies ever making it.  On summary judgment, however, the Court's role in assessing credibility is extremely limited, and defendant must save its challenges to plaintiff's credibility for trial.  See Dominguez-Curry v. Nevada Transp. Dept.,  424 F.3d 1027, 1035-36 (9th Cir. 2005) (noting that credibility determinations are "exclusively within the province of the factfinder at trial, not the district court on summary judgment").

Defendant's motion for summary judgment (docket #27) is **DENIED**.

The final pretrial conference and jury trial in this matter remain on calendar for February 2, 2009, at 11:00 a.m., and February 10, 2009, at 9:30 a.m., respectively.

**IT IS SO ORDERED.**